UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMGUARD INSURANCE COMPANY, | ) | CASE NO. 3:24-CV-1202 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHAWN GIBSON and SANTA PEREZ, | ) | MARCH 27, 2026 |
| as Administratrix of the Estate of Aryndel | ) | |
| Castro, | ) | |
| *Defendants*. | ) | |

MEMORANDUM OF DECISION
RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 39)

Kari A. Dooley, United States District Judge:

Plaintiff AmGUARD Insurance Company ("AmGUARD") commenced this declaratory judgment action in order to resolve a coverage dispute between AmGUARD and its insured, Defendant Shawn Gibson, in relation to a personal injury action commenced by Defendant Santa Perez, Administratrix of the Estate of Aryndel Castro ("Perez"), against Defendant Gibson and Terrance Boyd[1] in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport (Docket No. FBT-CV23-6125187-S) (hereinafter, the "Underlying Action"). *See* Second Amended Complaint ("SAC"), ECF No. 27. Now pending before the Court is AmGUARD's Motion for Summary Judgment, which, for the reasons that follow, is **GRANTED**. *See* MSJ, ECF No. 39.

**Background and the Underlying Action**

The relevant facts are taken from the SAC, and the parties' respective Local Rule 56(a) Statements and attached exhibits. *See* SAC; AmGUARD Rule 56(a)1 Statement ("AmGUARD

---

[1] Terrance Boyd, although named as a defendant in the Underlying Action, is not an insured under the Policy and so has not been named as a party to this action.

56(a)1"), ECF No. 39-2; Defendant Perez 56(a)2 Statement ("Perez 56(a)2"), ECF No. 50-1.  All the facts set forth herein are undisputed unless otherwise indicated.[2]

AmGUARD is an insurance company incorporated in Nebraska, with its principal place of business in Pennsylvania.  *See* SAC at ¶ 1.  AmGUARD is authorized to issue insurance policies in Connecticut.  *Id.*  Defendant Gibson is currently an inmate at Cheshire Correctional Institution, located in Cheshire, Connecticut ("Cheshire").  *Id.* at ¶ 2.  Defendant Perez resides in Bridgeport, Connecticut and is the Administratrix of the Estate of Aryndel Castro, the decedent ("Castro").  *Id.* at ¶ 3.

---

[2]  In opposing summary judgment, Defendant Perez asserts evidentiary objections to paragraphs 1 through 6 and paragraphs 33 through 36 of AmGUARD's 56(a)1 Statement, and otherwise objects to paragraphs 7 through 28 and 30 through 32 on relevance grounds.  *See* Perez 56(a)2. As discussed *infra*, any evidentiary objections to paragraphs 1 through 6 and paragraphs 33 through 36 are unpersuasive and therefore, overruled.  Further, the Court observes that paragraphs 7 through 32 generally set forth the procedural history of the Underlying Action and describe the factual allegations made by Defendant Perez in that action. Indeed, regardless of whether paragraphs 7 through 32 include relevant assertions of fact for purposes of a summary judgment motion, the Court can—and does—take judicial notice of the procedural history of the Underlying Action, as well as the pleadings filed therein.  *See Schenk v. Citibank/Citigroup/Citicorp*, No. 10-CV-5056 (SAS), 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010) ("Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions."); *but see Oudekerk v. Lehoisky*, No. 24-CV-311 (AMN), 2025 WL 3204486, at *3 (N.D.N.Y. Nov. 17, 2025) ("a court may not take judicial notice of a document filed in another court for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation marks omitted). Moreover, while it may well be that the Underlying SAC completely replaced the prior pleadings filed in the Underlying Action, this does not prevent AmGUARD from merely describing the allegations set forth in such prior pleadings.  In fact, Defendant Perez does not appear to dispute the accuracy of the assertions set forth in paragraphs 7 through 28 and 30 through 32.  Rather, she challenges their admissibility at trial as "irrelevant."  The Court disagrees. The objections are overruled and the facts described in paragraphs 7 through 28 and 30 through 32 are deemed undisputed.

In or about November 2021, AmGUARD issued a Homeowners Insurance Policy (No. SHHO280070) (the "Policy") to Defendant Gibson as the named insured.[3] Pl. 56(a)1 at ¶ 1 (citing Certified Copy of the Policy, Exhibit A). The Policy's liability coverage provides:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, [AmGUARD] will:
>
> 1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

*Id.* at ¶ 3.

Under the Policy, "bodily injury" means "bodily harm, sickness or disease, including required care, loss of services and death that results." *See id.* at ¶ 5. "Occurrence" means "an

---

[3] Defendant Perez challenges the admissibility of AmGUARD's factual assertions as to the contents of the Policy, arguing that AmGUARD failed to comply with 28 U.S.C. § 1746 by not offering a statement attesting to the Policy's validity "under penalty of perjury." *See* Perez 56(a)2 at ¶¶ 1–6. According to Defendant Perez, the Policy attached to AmGUARD's Motion for Summary Judgment as Exhibit 1-A is inadmissible and cannot be considered, because affiant Underwriting Analyst Alana Evans did not specifically attest to the Policy's authenticity "under penalty of perjury," *see* Pl. 56(a)1, Exhibit 1-A, ECF No. 39-2 at 12. Defendant Perez is wrong and this argument is specious. As an initial matter, Defendant Perez has offered no basis for the Court to meaningfully question the authenticity of the Policy. And though perhaps not certified "under penalty of perjury," AmGUARD nevertheless provided a statement from an AmGUARD representative that Exhibit A is a "full, true, and complete reproduction" of the Policy. *See* Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). And although unnecessary, in reply to this argument, AmGUARD submitted an affidavit from AmGUARD Personal Lines Manager Karlene Dillon which, under penalty of perjury, attests to the accuracy and authenticity of the Policy. *See* AmGUARD Reply, Dillon Aff., ECF No. 51-1; *see e.g.*, *Thigpen v. Bd. of Trs. of Loc. 807 Lab.-Mgmt. Pension Fund*, No. 18-CV-162 (PKC) (LB), 2019 WL 4756029, at *5 n.11 (E.D.N.Y. Sept. 29, 2019) (considering a supplemental affidavit that "merely respond[ed] to matters placed in issue by [p]laintiff in her opposition brief, and therefore d[id] not spring upon [p]laintiff new reasons for the entry of summary judgment"). Finally, AmGUARD need only put forth evidence that *could be* presented in a form admissible at trial. *See Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order). Defendant Perez, in opposing the Motion, would have to establish that the evidence relied upon "cannot be presented in a form that would be admissible" at trial. Fed. R. Civ. P. 56(c)(2). Clearly, Plaintiff could properly authenticate the Policy at trial. For these reasons, Defendant Perez's authenticity objections are overruled, and AmGUARD's factual assertions as to the Policy are deemed admitted.

3

accident, including continuous or repeated exposure to substantially the same general harmful

conditions, which results, during the policy period, in: (a) 'Bodily injury'; or (b) 'Property

damage.'" *Id.*

Additionally, the Policy includes the following exclusions from coverage:

1. Expected Or Intended Injury

   "Bodily injury" or "property damage" which is expected or intended by an "insured," even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or
   b. Is sustained by a different person, entity or property than initially expected or intended.

   However, [the expected or intended injury exclusion] does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property.

7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse

   "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse.

*Id.* at ¶¶ 4–6.

Aryndel Castro was reported missing on September 24, 2013.[4] *Id.* at ¶ 34.  His body was

found years later, on December 9, 2021 at 1803 Noble Avenue, Bridgeport, Connecticut.[5] *Id.* at ¶

---

[4]  Defendant Perez objects to AmGUARD's additional assertion regarding the date on which Castro was last known to be alive (the "LKA Date").  *See* Perez 56(a)2 at ¶ 34.  More specifically, Defendant Perez argues that such assertion—which is derived from Plaintiff's Exhibit 1-G, the Office of the Chief Medical Examiner's Report of Investigation Form (the "ME Report")—is inadmissible.  Again, Perez misapprehends Plaintiff's burden on summary judgment and her own in terms of challenging the evidence relied upon.  *See supra* n.3.  However, Castro's LKA Date is only implicated in connection with AmGUARD's argument that the "bodily injury" at issue occurred outside of the period during which Defendant Gibson was insured by AmGUARD.  Thus, insofar as the Court has herein determined in the first instance that the claims alleged in the Underlying Action are either not covered, or are otherwise excluded, under the unambiguous terms of the Policy, it need not determine whether the ME Report could be made admissible at trial.

[5]  Defendant Perez denies this purported statement of fact on the grounds that the ME Report fails to comply with 28 U.S.C. § 1746, insofar as it does not include a statement "under penalty of perjury" attesting to its validity as  an expert report.  *See* Perez 56(a)2 at ¶ 33.  This objection has no basis in law and is overruled.  *See also supra* n.3.  This factual statement is deemed undisputed.

33.   One day earlier, on December 8, 2021, Defendant Gibson was arrested and charged with murder occurring on or about September 22, 2013.[6]  *Id.* at ¶ 35.  After pleading *nolo contendere* on March 12, 2024, Defendant Gibson was sentenced to prison on May 15, 2024 in connection with the foregoing murder charge.  *See id.* at ¶¶ 36–37.

The Underlying Action was commenced on June 13, 2023.  An Amended Complaint was filed in the Underlying Action on November 4, 2024.  *See* SAC at ¶¶ 19–20.  A Second Amended Complaint (hereinafter, the "Underlying SAC") was filed in the Underlying Action on January 9, 2025.  *See* Pl. 56(a)1 at ¶ 29.  Count One of the Underlying SAC asserts a claim for negligence against Defendant Gibson and alleges that on a date prior to December 9, 2021, Defendant Gibson repeatedly struck Castro in Bridgeport, Connecticut, but did not intend to kill him.  *See* Underlying SAC at ¶¶ 5–6.  Rather, the Underlying SAC alleges that Gibson was under the influence of drugs and/or alcohol, and the assault upon Castro was due to Gibson's negligence and carelessness, resulting in Castro's death.  *Id.* at ¶¶ 6–7.  The Underlying SAC further alleges that Castro experienced antemortem suffering when he was left injured and unresponsive for an extended period of time prior to succumbing to his injuries, and that Defendant Gibson thereafter concealed the location of Castro's body, preventing Castro from bringing the Underlying Action until years later, after his body was discovered.  *See id.* at ¶¶ 8, 12–13.  Defendant Gibson tendered his defense in the Underlying Action to AmGUARD, who in turn reserved their rights to seek a declaratory judgment as to whether a defense is owed to Defendant Gibson under the Policy.  *See* SAC at ¶¶ 29–30.

---

[6]   Though not asserted by AmGUARD as an undisputed fact, the Court observes that the warrant application underlying Defendant Gibson's arrest makes clear that he was arrested and charged specifically in connection with the murder of Aryndel Castro.  *See* Pl. 56(a)1, Exhibit 1-H, ECF No. 39-2 at 156–167.

Consistent with this reservation of rights, on July 16, 2024, AmGUARD filed the instant action seeking a declaratory judgment that AmGUARD has no duty to defend or indemnify Defendant Gibson in the Underlying Action. Specifically, AmGUARD alleges that the damages stemming from the bodily injury suffered by Castro are not covered in the first instance because the injuries did not result from an "occurrence." SAC at ¶ 40. AmGUARD further alleges that the injuries are also excluded from coverage under the Policy because Defendant Gibson "expected and intended the bodily injury Castro suffered" regardless of Defendant Gibson's purported state of intoxication, and/or "because the bodily injury arose out of sexual molestation, corporal punishment or physical or mental abuse." *Id.* at ¶¶ 41–42. Thus, AmGUARD claims it has no duty to defend or indemnify Defendant Gibson under the terms of the Policy. *See id.* at ¶¶ 40, 50.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). It cannot "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). Nor can it rely on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in its favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

**Discussion**

AmGUARD asserts that it does not owe a defense or indemnification to Defendant Gibson as a matter of law because: (1) Defendant Gibson's conduct, as set forth in the Underlying SAC, does not constitute an "occurrence" under the Policy; (2) the Policy excludes coverage for bodily injury which, as here, is expected or intended by the insured, or arises out of physical abuse; and (3) regardless of the foregoing, the bodily injury suffered by Castro "occurred prior to the inception of the Policy," and is therefore not subject to coverage. In response, Defendant Perez argues that AmGUARD has not demonstrated as a matter of law that it has no duty to defend Defendant Gibson in the Underlying Action, insofar as: (a) AmGUARD's arguments are based on allegations set forth in pleadings from the Underlying Action that have since been superseded and completely replaced by the Underlying SAC; (b) the allegations from the Underlying SAC demonstrate that Defendant Gibson's conduct *is* covered by the Policy; (c) AmGUARD's indemnification claim

(Count Two) is not ripe for adjudication on summary judgment; and (d) the actual cause of Castro's death remains disputed, thereby precluding summary judgment at this juncture.  The Court agrees with AmGUARD.

Generally, "the question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of the complaint with the terms of the insurance policy."  *Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 308 Conn. 146, 154 (2013) (internal quotation marks, citation, and alterations omitted).

> "In construing the duty to defend as expressed in an insurance policy, [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage.  If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability . . . . It necessarily follows that **the insurer's duty to defend is measured by the allegations of the complaint** . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend."

*Hartford Cas. Ins. Co. v. Litchfield Mutual Fire Ins.*, 274 Conn. 457, 463 (2005) (emphasis added; internal quotation marks and citations omitted).

"If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured."  *Id.* (emphasis in original; internal quotation marks and citation omitted).  "[Connecticut courts construe] broad policy language in favor of imposing a duty to defend on the insurer."  *Id.* at 466.  However, "[w]here the insurer has sufficient knowledge to show that a claim falls within coverage even though not properly pleaded to [invoke] coverage, the carrier cannot make the face of the complaint argument[.]"  *Id.* at 467 (internal quotation marks omitted).  Instead, an insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage."  *Id.* (internal quotation marks omitted).

8

An insurer's duty to defend is broader than its duty to indemnify. *Cmty. Action for Greater Middlesex Cty., Inc. v. Am. All. Ins. Co.*, 254 Conn. 387, 398 (2000). Thus, if an insurer has no duty to defend, it has no duty to indemnify. *DaCruz v. State Farm Fire and Cas. Co.*, 268 Conn. 675, 688 (2004).

"Under Connecticut law, the interpretation of an insurance policy is a question of law for the court." *Arrowood Surplus Lines Ins. Co. v. Westport Ins. Corp.*, No. 3:08-CV-1393 (AWT), 2010 WL 56108, at *2 (D. Conn. Jan. 5, 2010), *aff'd sub nom.* 395 F. App'x 778 (2d Cir. 2010) (citing *Pac. Indem. Ins. Co. v. Aetna Cas. & Sur. Co.*, 240 Conn. 26, 30 (1997)). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy [and] [t]he policy words must be accorded their natural and ordinary meaning[.]" *Aetna Cas. & Sur. Co.*, 240 Conn. at 29–30 (internal quotation marks omitted). Significantly, the Court "must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result[.]" *Arrowood Indem. Co. v. King*, 304 Conn. 179, 187 (2012). Further, "any ambiguity in the terms of an insurance policy must be construed in favor of the insured [but such rule] may not be applied . . . unless the policy terms are indeed ambiguous [and] the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous[.]" *Aetna Cas. & Sur. Co.*, 240 Conn. at 30. The Court will not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity[.]" *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 584 (1990).

The Policy

The Court finds that the allegations set forth in the Underlying SAC do not bring Castro's injuries within the coverage set forth in the Policy, and that therefore, as a matter of law, AmGUARD has no duty to defend or indemnify Defendant Gibson in connection with the Underlying Action.

Under the Policy, Defendant Gibson is entitled to legal defense and/or indemnification by AmGUARD for "bodily injury" caused by an "occurrence." *See* Pl. 56(a)1 at ¶ 3.    "Occurrence" means "an accident' . . . which results, during the policy period, in: (a) 'Bodily injury'; or (b) 'Property damage.'" *Id.*

Here, although the Underlying SAC labels the claims as sounding in negligence, the alleged circumstances resulting in the bodily injury set forth therein, when read as a whole, cannot be said to arise out of an "occurrence" as that term is used in the Policy.[7]  Indeed, Perez's strategic labels of negligence are inconsistent with the Underlying SAC's *own factual allegations*, which allege that: Defendant Gibson repeatedly struck Castro, causing him to "suffer serious personal injuries, including multiple blunt trauma injuries"; thereafter Defendant Gibson left Castro "injured and unresponsive on the exterior premises [of 941 Noble Avenue] for an extended period of time," where he succumbed to his injuries; and eventually Defendant Gibson concealed Castro's body. Courts routinely find that allegations manifestly describing intentional conduct, as here, fall outside of a policy's coverage for "accidents", notwithstanding the labels affixed to the underlying claim. *See Allstate Ins. Co. v. Jussaume*, 35 F. Supp. 3d 231, 236 (D. Conn. 2014) ("whether an insurer is obligated to defend an insured is determined by the facts in the underlying complaint,

---

[7] AmGUARD asks this Court to consider the earlier allegations set forth in the Underlying Complaint and Underlying Amended Complaint when determining whether AmGUARD has any duty to defend. *See* MSJ at 12–13. However, the Court need not do so, having herein resolved the instant coverage dispute in AmGUARD's favor based solely on the allegations contained in the Underlying SAC.

and not the titles assigned to the particular causes of action.") (internal citations and quotations omitted); *State Farm Fire & Cas. Co. v. Tully*, 322 Conn. 566, 575 (2016) ("even when an action is pleaded as an unintentional tort such as negligence, the court examines the alleged activities in the complaint to determine whether the insured intended to commit both the acts and the injuries that resulted. If so, regardless of the title of the action, the court holds the action to be outside the coverage of the policy") (internal citations and quotations omitted); *State Farm Fire & Cas. Co. v. Bullock*, No. 387111, 1997 WL 309584, at *4 (Conn. Super. Ct. May 30, 1997) (although labeled as a "negligence" claim, allegations that insured's child assaulted plaintiff's child did not allege an "accident" under the policy at issue because the "factual allegations manifestly describe an intentional assault").[8] Indeed, merely describing an action in terms of "negligence" is of no consequence when the action itself "can only be deemed intentional." *Middlesex Mut. Assurance Co. v. Rand*, No. CV 9576644, 1996 WL 218698, at *3 (Conn. Super. Ct. Apr. 4, 1996). Put differently, "[a] plaintiff, by describing his or her cat to be a dog, cannot simply by the descriptive designation cause the cat to bark." *Id.*

Defendant Perez argues that AmGUARD cannot look to outside sources beyond the face of the Underlying SAC to determine the availability of coverage under the Policy, and that the allegations set forth in Underlying SAC clearly establish that Defendant Gibson's actions were unintentional, and therefore amount to a covered "occurrence." *See* Perez Opp., ECF No. 50 at 21–22. Defendant Perez further contends that "the negligence alleged was not the striking of Castro, but was leaving Castro outside on the premises for an extended period of time where he succumbed to his injuries." *Id.* at 22. The Court is not persuaded. First, as discussed above, the Court reaches its conclusion herein based on an assessment of the allegations set forth in the

---

[8] The policies in each of the foregoing cases cited provided coverage for either "accidents," or "occurrences" which were defined as being "accidents," such as the Policy here.

Underlying SAC, not any outside evidence.  Moreover, in seeking to frame Defendant Gibson's alleged actions as negligent, Defendant Perez cherry-picks certain conclusory allegations in the Underlying SAC pertaining to negligence, while strategically overlooking the (much fewer) factual allegations which make manifest that Defendant Gibson's alleged conduct was intentional. Relatedly, notwithstanding that Defendant Perez may view the relevant negligent conduct as Defendant Gibson leaving Castro injured outside of the premises, the Court's evaluation as to the existence of an "occurrence" is not limited to the allegations that Defendant Perez selectively identifies as demonstrating a cause of action for negligence.[9]  *See Misiti*, 308 Conn. at 154; *see also Kingstone Ins. Co. v. Bottone*, 719 F. Supp. 3d 192, 201 (D. Conn. 2024) ("The inquiry into an insurer's duty to defend . . . focuses on the facts alleged, not legal theories.") (citation and internal quotation marks omitted).

For the foregoing reasons, the Court concludes that the Underlying SAC does not allege that Castro's injury resulted from an "occurrence," and therefore those injuries fall outside the scope of coverage under the Policy.[10]

---

[9]  Ironically, in support of this argument, Defendant Perez relies on outside evidence, to wit, the relevant Information and Arrest Warrant Application, which concluded that during the incident, Castro "crashed" through a kitchen window head-first and landed outside on the exterior of the premises.  The Court further observes that, if anything, Defendant Gibson leaving Castro injured outside the premises, where he ultimately died, supports the notion that his conduct was intentional, not negligent – particularly given his ensuing efforts, as alleged, to conceal Castro's body.

[10]  Defendant Perez also argues that AmGUARD's Motion for Summary Judgment is not ripe for adjudication insofar as, "[a]bsent a verdict in the [Underlying Action], there is no basis for [AmGUARD] to conclude that summary judgment on the duty to indemnify is appropriate in this suit." Perez Opp. at 23.  Defendant Perez is wrong.  It is well-settled that if an insurer has no duty to defend, it necessarily has no duty to indemnify. *DaCruz*, 268 Conn. at 688.  And here, given the Court's finding as to AmGUARD's duty to defend, the Court can, and has, concluded as a matter of law that AmGUARD owes no duty to indemnify Defendant Gibson.  Additionally, Defendant Perez contends that purported disputes of fact as to the actual cause of Castro's death preclude summary judgment.  Not so.  This declaratory judgment action was initiated to resolve a coverage dispute, not to determine the manner and nature Castro's untimely death.  Indeed, the Court's decision herein is based on the allegations set forth in the Underlying SAC, which despite being labeled as "negligent," describe intentional conduct on the part of Defendant Gibson. Whether Defendant Gibson's actions were the legal cause of Castro's death does not impact the determination of whether Defendant Gibson's conduct constitutes an "occurrence" under the Policy. *See Warzecha v. USAA Cas. Ins. Co.*, 206 Conn. App. 188, 192 (2021) ("The duty to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether the complaint stated facts which bring the injury within the coverage."). (citation omitted).

The Expected or Intended Injury Exclusion

Although a finding of no coverage is dispositive of this declaratory judgment action, the Court nevertheless addresses the alternative argument that even if there was coverage in the first instance, certain exclusions still bar recovery under the Policy. Specifically, AmGUARD argues that Defendant Gibson's alleged conduct is subject to the "expected or intended injury exclusion" set forth in the Policy, which excludes from coverage "'[b]odily injury' or 'property damage' which is expected or intended by an 'insured,' even if the resulting 'bodily injury' or 'property damage' . . . [i]s of a different kind, quality or degree than initially expected or intended . . ."[11] The Court agrees with AmGUARD.

The word "intend" is defined as "to have as a plan or purpose." *Intend*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/intend (last visited March 25, 2026). The word "expected" is defined as "believed to be going to happen or arrive." *Expected*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/expected (last visited March 25, 2026).

Here, the Underlying SAC asserts that Defendant Gibson "repeatedly struck" Castro, causing multiple blunt trauma injuries, some or all of which resulted in Castro's death. Underlying SAC at ¶¶ 5, 7. As set forth above, based on these allegations, Defendant Gibson plainly intended to cause bodily injury to Castro, or at the very least, expected that bodily injury would result from his repeated strikes. To hold otherwise would be to torture the natural and ordinary meaning of both "intended" and "expected," and by extension, the express terms of the Policy. *See Aetna Cas. & Sur. Co.*, 240 Conn. at 29–30. The Underlying SAC claims that Defendant Gibson was

---

[11] Though the expected or intended injury exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property, Perez, understandably, does not claim that Defendant Gibson was acting in self-defense when he repeatedly struck Castro.

13

intoxicated when he struck Castro, and otherwise disputes that he intended to *kill* Castro. Underlying SAC at ¶¶ 5–6.  But the Court agrees with AmGUARD that, irrespective of Defendant Gibson's intoxicated state, and regardless of whether he specifically intended for Castro to die, the bodily injuries suffered by Castro were the direct and natural consequence of Defendant Gibson's intentional act of repeatedly striking him.  *See NLC Ins. Cos. v. Hardgrove*, No. HHB-CV-23-6081389, 2024 WL 4490592, at *3 (Conn. Super. Ct. Oct. 7, 2024) (finding that an insured's voluntary intoxication "may not be used to negate his intent to cause the injuries sustained") (citing *Tully*, 322 Conn. at 587) (internal quotation marks omitted).  Accordingly, Defendant Gibson's alleged conduct falls within the expected or intended injury exclusion as well.

**Conclusion**

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**. AmGUARD has no duty to defend or indemnify Shawn Gibson in the matter of *Perez v. Gibson, et al.*, Case No. FBT-CV23-6125187-S.  The Clerk of Court is directed to enter judgment for AmGUARD on Counts One and Two, and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of March 2026.

    /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE